IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEXANDER J. ANDUZE, ) | |
| No. B88839, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
|   vs. ) | Case No. 14-cv-01153-NJR |
| ) | |
| STEVE DUNCAN, R.D. MOORE, ) | |
| LAURA CUNNINGHAM, MS. NEW, ) | |
| MS. DAVIS, and MS. ARNOLD, ) | |
| ) | |
|       **Defendants.** ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

    Plaintiff Alexander J. Anduze, an inmate in Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on how prison officials responded to his cellmate's two suicide attempts and his exposure to bloodborne pathogens.

    Plaintiff's amended complaint (Doc. 12) is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the amended complaint, on July 23, 2014, Plaintiff's cellmate attempted suicide with a razor. Blood covered the cell, as well as Plaintiff and his personal property. Plaintiff was taken to the healthcare unit, but no blood tests were run to see if, for example, Plaintiff had been exposed to HIV or hepatitis. Instead, a correctional officer escorted Plaintiff to a shower and instructed him to wash the blood off his body—denying Plaintiff's request for soap, solvent or other disinfectant.

Plaintiff wrote to the Placement Office asking that his cellmate not be returned to their cell because he posed a danger. In August 2014, "command and mental health staff" authorized the suicidal cellmate's return to general population and to be placed in a cell again with Plaintiff—despite Warden Duncan, Assistant Warden Moore, and Medical Administrator Cunningham being aware of the inmate's mental condition, suicidal tendencies and aggressive nature.

On August 24, the cellmate again attempted suicide with a razor—a razor he had been given by "officials." After cutting his face and upper body, the cellmate awakened Plaintiff. Because the cellmate was still holding the razor, Plaintiff feared that his life was in danger, so he hit the panic alarm in the cell to summon help. When Plaintiff jumped down from his bunk, he slipped on blood and fell to the floor. Covered in blood, Plaintiff was taken to the health care unit and the whole scenario repeated itself. He was not tested for bloodborne diseases; he was taken to a shower, but not given any soap. Plaintiff contends that how he was processed through the healthcare unit was contrary to policies and procedures regarding exposure to blood.

Plaintiff returned to his cell, but the blood had not been cleaned up, so he was left to clean his cell without any training, proper solvents, or protective equipment—exposing him to bloodborne pathogens a third time.

Plaintiff has submitted multiple written requests directly to Medical Administrator Cunningham and to sick call seeking testing for bloodborne diseases, all to no avail.

After the first suicide attempt, Plaintiff sought mental health treatment for emotional trauma caused by the incident. On September 10, 2014, Plaintiff was seen for the first time. Social Worker Arnold "dismissed" Plaintiff, "offering no proper counseling or treatment." Several more requests were made before Plaintiff was seen by Social Worker New on September 22. Ms. New diagnosed Plaintiff as having post-traumatic stress disorder ("PTSD"), but did not offer any counseling or treatment options at that time. Ms. New only said she would place Plaintiff on a call line to see her regularly, but Plaintiff has not seen her again. A week later, however, on September 29, Plaintiff was seen by Social Worker Davis, who agreed that Plaintiff

had PTSD. Ms. Davis recommended "EDM therapy,"[1] which requires 90-minute sessions every two weeks for the best results—something that "current policies & procedures" did not permit. Plaintiff has not seen Ms. Davis since then. On October 20, Plaintiff saw Ms. Arnold again; Arnold gave him a packet of material about PTSD, but did not offer any treatment or medication. On November 11, Plaintiff met with an unidentified psychologist via a video link. Plaintiff was prescribed the antidepressant Remeron, but no other "proper treatment options" were offered.

Plaintiff contends Warden Duncan's policies and procedures, which are purportedly implemented by Assistant Warden Moore, allowed Plaintiff to be housed with a dangerous inmate, not once, but twice, causing Plaintiff to develop PTSD. And, the medical and mental healthcare departments, under the supervision of Medical Administrator Cunningham, failed to provide any tests or treatment for exposure to bloodborne pathogens, or any therapy for diagnosed PTSD.

The amended complaint lists as defendants Warden Duncan, Assistant Warden Moore, Medical Administrator Cunningham and three social workers, Ms. New, Ms. Davis, and Ms. Arnold. Defendants are alleged to have been deliberately indifferent. Plaintiff seeks compensatory damages and affirmative injunctive relief, including department-wide policy changes regarding how suicide attempts are handled.

Based on the allegations in the amended complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

---

[1] Eye movement desensitization ("EMD") is a nontraditional form of psychotherapy for PTSD, using rapid, rhythmic eye movements to dampen emotional memories of past traumatic events. *See* www.webmd.com/mental-health/emdr-what-is-it.

> **Count 1:** Warden Duncan and Assistant Warden Moore, acting with deliberate indifference, exposed Plaintiff to a substantial risk of harm to his safety and health relative to celling him with a suicidal inmate on two occasions, in violation of the Eighth Amendment;
>
> **Count 2:** Medical Administrator Cunningham, acting with deliberate indifference, failed to treat Plaintiff's serious medical needs after he was exposed to bloodborne pathogens, in violation of the Eighth Amendment;
>
> **Count 3:** Medical Administrator Cunningham and Social Workers New, Davis and Arnold, acting with deliberate indifference, failed to treat Plaintiff's serious psychological needs (PTSD), in violation of the Eighth Amendment; and
>
> **Count 4:** Warden Duncan, Assistant Warden Moore and Medical Administrator Cunningham had inadequate policies and procedures regarding how to handle exposure to blood-borne pathogens, thereby endangering Plaintiff's health and safety, in violation of the Eighth Amendment.

## Discussion

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).

Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Furthermore, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte County Sheriff's*

*Dep't*, 306 F.3d 515, 517 (7th Cir. 2002).  Negligence, even gross negligence, is insufficient for Eighth Amendment liability.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Rather, the corrections official must have acted with the equivalent of criminal recklessness.  *Id*. at 836–37.

Relative to celling Plaintiff with a suicidal (possibly homicidal) inmate with a razor, the Seventh Circuit has stated, "If the prison officials 'know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.'" *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Billman v. Ind. Dep't of Corrections,* 56 F.3d 785, 788 (7th Cir.1995)).  Whether the sort of exposure to blood described in the amended complaint poses a health hazard is certainly possible.  *See* www.cdc.gov/niosh/topics/bbp.  And, PTSD has been accepted as a "serious health condition."  *See, e.g.*, *Lee v. City of Elkhart, Ind.*, 602 F. App'x 335, 339 (7th Cir. 2015).  Thus, as a general matter, Counts 1-4 implicate the Eighth Amendment.  But that does not end the Court's analysis.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  The *respondeat superior* doctrine—supervisory liability— does not apply to actions filed under 42 U.S.C. § 1983.  *See, e.g.*, *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can, however, suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002).

Many of the specific incidents that Plaintiff takes issue with involve individuals not identified and/or named as defendants.  For example, the correctional officers who did not give

Plaintiff soap to clean himself with, nurses who failed to treat Plaintiff, "placement" officials to whom Plaintiff wrote, and the unidentified psychologist who conferred with Plaintiff, are not listed as "John Doe" defendants to be identified later. The only defendants are Warden Duncan, Assistant Warden Moore, Medical Administrator Cunningham, and Social Workers New, Davis and Arnold.

Duncan, Moore, Cunningham, New, Davis, and Arnold are all mentioned in the narrative of the amended complaint, but the allegations regarding the individual actions of Social Workers New, Davis, and Arnold do not suggest deliberate indifference. Plaintiff complains that he was not given "proper" treatment for his PTSD. Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir .2006). Otherwise, there is nothing to suggest that the three social workers, personally, were more than negligent. Thus, as pleaded, the amended complaint fails to state viable Eighth Amendment claims against Social Workers New, Davis, and Arnold, and they shall each be dismissed without prejudice.

The allegations against the three administrators, Warden Duncan, Assistant Warden Moore, and Medical Administrator Cunningham, are somewhat muddled. References to what "command" did or did not do are too vague. Moreover, as already explained, the *respondeat superior* doctrine does not apply; therefore, Duncan, Moore, and Cunningham cannot face liability merely because they are supervisors—which is the primary thrust of the amended complaint. With that said, a generous reading of the amended complaint as a whole reveals a tenuous basis for attributing key decisions to the policies and practices of Warden Duncan and Medical Administrator Cunningham. They were all purportedly aware that Plaintiff's cellmate

was unstable, suicidal, and aggressive, and on two occasions, they permitted him to be placed in the general population, put in a cell with Plaintiff, and armed with a razor (*see* Doc 12, pp. 8, 9, 11). How Plaintiff's exposure to bloodborne pathogens was handled in terms of medical care and clean up, and how his PTSD was treated, all allegedly was driven by the policies and practices of Warden Duncan and Medical Administrator Cunningham. The amended complaint, however, offers only the bald assertion that policies and practices were implemented by Assistant Warden. Thus, the claims against Moore fail to satisfy the *Twombly* pleading standard. Moore will be dismissed without prejudice. The claims against Warden Duncan and Medical Administrator Cunningham (Counts 1-4) shall proceed, thereby allowing the Court to better sort out who was personally responsible for creating the policies, practices, and customs that caused the alleged constitutional deprivations.

### Second Motion for Counsel

Plaintiff has filed a second motion for counsel (Doc. 11). There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The

question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff previously gave no indication that he had attempted to secure counsel, and his second motion offers only an assertion that he has been unsuccessful in securing representation. Failing to make that threshold showing alone dooms the motion. He otherwise only asserts that he is financially unable to afford to retain an attorney, and that he lacks the knowledge to properly represent himself. As demonstrated by the complaint and the amended complaint, Plaintiff can articulately and adequately explain his claims factually and legally and follow the directions from the Court. Plaintiff previously indicated that he has some college education, and he is not currently on any medication. Although some medical matters are at issue, it is not readily apparent that special medical knowledge is necessary. *See Henderson v. Ghosh*, 755 F.3d 559, 564-66 (7th Cir. 2014) (assessing an inmate's ability to prosecute a medical claim). Therefore, Plaintiff's second motion for recruitment of counsel (Doc. 11) will be denied without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's second motion for recruitment of counsel (Doc. 11) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that, for the reasons stated, Defendants **R.D. MOORE, MS. NEW, MS. DAVIS, and MS. ARNOLD** are each **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, as discussed above, **COUNTS 1-4** shall otherwise **PROCEED** against Defendants **STEVE DUNCAN and LAURA CUNNINGHAM**.

The Clerk of Court shall prepare for Defendants **STEVE DUNCAN and LAURA CUNNINGHAM**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 23, 2015**

*/s/ Nancy J. Rosenstengel*

**NANCY J. ROSENSTENGEL**
**United States District Judge**