IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEXANDER J. ANDUZE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:14-CV-1153-NJR-DGW |
| | ) |
| STEPHEN DUNCAN and LORIE CUNNINGHAM, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Alexander Anduze, a former inmate in the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Specifically, Anduze alleges prison officials failed to adequately respond to his cellmate's two suicide attempts, causing him to be exposed to bloodborne pathogens. Anduze's complaint was screened pursuant to 28 U.S.C. § 1915A, and he was allowed to proceed on the following claims:

Count One: Warden Stephen Duncan, acting with deliberate indifference, exposed Plaintiff to a substantial risk of harm to his safety and health relative to celling him with a suicidal inmate on two occasions, in violation of the Eighth Amendment;

Count Two: Medical Administrator Lorie Cunningham, acting with deliberate indifference, failed to treat Plaintiff's serious medical needs after he was exposed to bloodborne pathogens, in violation of the Eighth Amendment;

> Count Three: Medical Administrator Cunningham, acting with deliberate indifference, failed to treat Plaintiff's serious psychological needs (PTSD), in violation of the Eighth Amendment; and
>
> Count Four: Warden Duncan and Administrator Cunningham had inadequate policies and procedures regarding how to handle exposure to bloodborne pathogens, thereby endangering Plaintiff's health and safety, in violation of the Eight Amendment.

Defendants Cunningham and Duncan filed motions for summary judgment that are now before the Court (Docs. 58 and 62). After careful consideration of the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, Defendants' motions for summary judgment are granted.

**FACTUAL BACKGROUND**

Anduze's claims in this matter stem from two separate incidents wherein his cellmate, Mr. Woodcock, attempted suicide, causing Anduze to be exposed to Woodcock's blood. With regard to the first occurrence, on or about July 24, 2014, Anduze testified that when he awoke, his cell was covered in Woodcock's blood (Anduze's Deposition, Doc. 59-1, p. 14). Anduze came down from his top bunk and pushed the panic button in his cell (*Id.* at pp. 14-15). When the guards arrived, they took Anduze out of the cell and escorted him to the health care unit where a nurse wiped the blood off of his feet (*Id.* at pp. 15-16, 61). Anduze was not offered any medical treatment or blood testing while in the health care unit (*See id.* at pp. 16-18). Soon thereafter, Anduze was escorted by correctional officers to the segregation unit where he showered; however, he was not provided soap to wipe the blood off of his hands and arms (*Id.* at pp. 16-17, 62). Anduze also asked the officers for a nurse to examine him, but to no avail (*Id.* at p. 18).

Sometime the following day, Anduze returned to his cell where he found traces of blood (*Id.* at pp. 19-20). Anduze testified that his cell was not sanitized as it should have been (*Id.* at p. 21). Following this incident, Anduze submitted an offender request asking that Woodcock not be returned to the cell (*Id.*). Despite his request, Woodcock was celled with Anduze approximately one week later (*Id.* at pp. 21-22).

On August 24, 2014, Woodcock again attempted suicide by way of razor, and Anduze again awoke to his cell covered in blood (*Id.* at pp. 25-26). Anduze pushed the panic button and kicked the door, and correctional officers eventually responded (*Id.* at 32). Anduze described this episode as much more violent and severe, explaining there was twice as much blood (*Id.* at p. 29). Anduze was escorted through health care to segregation, but the correctional officers did not stop at the health care unit, despite Anduze's request (*Id.* at pp. 31-33). Accordingly, no one wiped any blood off Anduze or provided any medical treatment, although medical personnel were present when Anduze was escorted through the unit (*Id.* at p. 33). Anduze testified that after going through such an incident, he should have been checked out by medical personnel (*Id.* at p. 35).

Anduze was taken to the showers in segregation where he requested soap from the correctional officers, but none was given (*Id.* at p. 38). Anduze also asked the correctional officers for medical treatment, but none was provided (*Id.*). Anduze was returned to his cell the following morning, but no one had cleaned up the blood (*Id.*).

During his deposition, Anduze said he sent request slips to Defendant Cunningham following these incidents, but he could not recall their contents (*Id.* at pp.

40-41). Anduze also indicated he submitted requests for a blood test (it is not clear if any of these requests were specifically addressed to Defendant Cunningham), but he never received such a test while at Lawrence (*Id.* at p. 57). Anduze was offered a blood test upon his release on July 1, 2015; however, he refused as he decided to have Veteran's Affairs conduct the testing for him (*Id.* at pp. 57-58). Anduze's testing from the VA clinic indicated "everything was fine" (*Id.* at p. 62).

Anduze also sought mental health treatment at Lawrence following the incidents mentioned above and apparently was diagnosed with post-traumatic stress disorder ("PTSD") (*Id.* at p. 43). Anduze testified he was not able to receive proper treatment for his PTSD because IDOC would not allow him sufficient time for the necessary therapy (*Id.*).

Anduze is proceeding in this action against Defendants Lorie Cunningham and Warden Stephen Duncan. Cunningham is a registered nurse and, at all times relevant to Anduze's complaint, was employed as the Director of Nursing at Lawrence (Affidavit of Lorie Cunningham, Doc. 59-3, ¶¶ 3, 7). Cunningham attests that as the Director of Nursing she did not implement policies, practices, or customs for the testing of bloodborne pathogens, cleaning of blood, cleaning of cells, provision of mental health treatment or services, inmate cell assignments, or the provision of hygienic products outside of the health care unit (*Id.* at ¶¶ 12-18).

The only policy in the record related to blood testing at Lawrence is Administrative Directive 04.03.116 regarding "Bloodborne Pathogens" (*see* Doc. 59-2). Said policy was created and implemented by the IDOC and requires an exposed

individual to immediately report to the HCU for an evaluation by a physician who will make all exposure determinations (*Id.* at p. 6).

LEGAL STANDARDS

**Summary Judgment**

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc., v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress &Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## **Eighth Amendment Deliberate Indifference**

It is well settled that although the Constitution does not mandate comfortable prisons, it does not permit inhumane ones. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (*citing Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation omitted)). As such, the Seventh Circuit Court of Appeals holds that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Id.* (citation omitted). In order to prevail on such a claim, two requirements must be met. *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Second, a prison official "must have a sufficiently culpable state of mind", mainly "deliberate indifference." *Id.*

"The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985), abrogated on other grounds. Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

## DISCUSSION

### A. Defendant Warden Stephen Duncan

Anduze claims Defendant Duncan acted with deliberate indifference by placing him in a cell with a suicidal inmate on two occasions and failing to implement adequate policies and procedures regarding the handling of exposure to bloodborne pathogens, thereby endangering Anduze's health and safety.

The evidence in the record indicates, however, that Anduze never spoke with Defendant Duncan following the events giving rise to this lawsuit. Anduze instead testified that Defendant Duncan is responsible for the incidents because he "runs the entire prison" and is therefore liable in his supervisory capacity. Anduze reiterates this argument in his response to Defendant's motion, stating that Defendant "can and should be liable due to his supervisory role as warden at Lawrence Correctional Center" (Doc. 68, p. 2).

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)). Personal involvement can also take the form of formulating and directing an unconstitutional policy. *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) (other citations omitted)). However, officials cannot be liable under § 1983 on the basis of any *respondeat superior* theory. *Id.*

Even when viewed in Anduze's favor, the evidence clearly shows that Defendant Duncan's professed liability here is predicted on this Defendant's position as the warden of Lawrence and the supervisory role Defendant had over the entire prison. There is nothing in the record to establish Defendant Duncan's personal involvement in Anduze's alleged constitutional deprivations, including any involvement in implementing a policy or practice that resulted in an unconstitutional deprivation. Indeed, the only applicable policy in the record appears to set forth specific evaluation and follow-up requirements following an exposure to bloodborne pathogens. Although it appears that the policy may not have been followed, there is no evidence that Defendant Duncan had any involvement in the circumvention of the policy. Accordingly, summary judgment in Defendant Duncan's favor is mandated on all counts.

**B.     Defendant Lorie Cunningham**

Anduze claims Defendant Cunningham acted with deliberate indifference by failing to treat his serious medical and psychological needs following his exposure to bloodborne pathogens and failing to implement adequate policies and procedures regarding the handling of exposure to bloodborne pathogens. Defendant Cunningham asserts she is entitled to judgment as a matter of law because there is no evidence she was involved in the constitutional deprivations alleged by Anduze, and she had no part in any policy or practice that caused the alleged deprivations.

When viewed in Anduze's favor, the evidence establishes that Anduze sent request slips to Defendant Cunningham following the incidents with his cellmate. It is

unknown what Anduze requested, however, and there is no evidence Defendant Cunningham received any of the requests (Doc. 59-1 at p. 42). Defendant Cunningham also attests that as the Director of Nursing at Lawrence, she did not implement policies, practices, or customs for the testing of bloodborne pathogens, cleaning of blood, cleaning of cells, provision of mental health treatment or services, inmate cell assignments, or the provision of hygienic products outside of the health care unit. In response to Defendant Cunningham's motion, Anduze indicates that as the Director of Nursing, Defendant Cunningham had direct involvement in all operations of the prison and must be held responsible for her decisions.

As set forth above, liability under § 1983 requires a finding of personal involvement, which may be satisfied by showing involvement in the formulation and implementation of an unconstitutional policy. *Del Raine*, 32 F.3d at 1047. Significantly, merely showing a defendant has supervisory duties is not sufficient to support a finding of § 1983 liability. *See id.* In light the personal involvement requirement, the evidence in the record is insufficient for a reasonable jury to conclude that Defendant Cunningham's actions amounted to deliberate indifference. Significantly, Anduze has failed to provide any evidence that Defendant Cunningham knew about the incidents and Anduze's subsequent lack of adequate medical and mental health treatment or that she had any role in promulgating any policy that caused a constitutional deprivation. Anduze's argument that Defendant Cunningham is liable based on her supervisory role is plainly inadequate to survive summary judgment. Accordingly, Defendant Cunningham is also entitled to judgment as a matter of law on all counts.

## CONCLUSION

For the reasons set forth above, Defendant Lorie Cunningham's Motion for Summary Judgment (Doc. 58) and Defendant Stephen Duncan's Motion for Summary Judgment (Doc. 62) are **GRANTED**. Plaintiff Alexander Anduze's claims are **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: August 2, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**